STATE OF NORTH CAROLINA    FILED   )   IN THE GENERAL COURT OF JUSTICE

DISTRICT COURT DIVISION

COUNTY OF FORSYTH    2020 JAN 23 P 1: 20   )   20 CVD 436

PENNYMAC LOAN SERVICES FORSYTH CO., C.S.C. )

BY_____ 10 _____ )

   Plaintiff,     )

    )     **COMPLAINT**

vs.     )     **(CMPLT)**

    )

BRAD JOHNSON and ELCI    )

WIJAYANINGSIH,     )

    )

   Defendants.     )

---

NOW COMES the Plaintiff, PennyMac Loan Services, LLC ("Plaintiff"), and for its Complaint, alleges and says as follows:

### PARTIES

1.   Plaintiff is a Delaware limited liability company, authorized to conduct business throughout North Carolina and conducting business, *inter alia*, in Forsyth County, North Carolina.

2.   Upon information and belief, Defendant Brad Johnson is an individual citizen and resident of Oak Island, Brunswick County, North Carolina.

3.   Upon information and belief, Defendant Elci Wijayaningsih is an individual citizen and resident of Oak Island, Brunswick County, North Carolina.

### JURISDICTION AND VENUE

4.   This is an action against Defendants for reformation of a deed of trust as described below. This court has jurisdiction over the subject matter of this lawsuit.

5.   Pursuant to North Carolina General Statutes §1-82, venue is proper in this Court.

BTM:756587v1

## GENERAL ALLEGATIONS

6.     On November 7, 2008, AmTrust Bank f/k/a Ohio Savings Bank, as Grantor, conveyed the property more particularly described below to Brad Johnson, as Grantee, by executing and delivering a Limited Warranty Deed, recorded on November 10, 2008, in Book 2856, Page 708 of the Brunswick County Public Registry, North Carolina (the "AmTrust Deed"):

> Being all of Lots 16 and 18, Block 186, Section N-6, Long Beach (now Oak Island), NC as shown on map recorded in Map Book 11, Page 89, Brunswick County Registry.

("Tract I")

7.     A true and correct copy of the AmTrust Deed is attached hereto and incorporated herein by reference as **Exhibit A.**

8.     On or about August 25, 2012, Homer E. Wright, Jr., as Grantor, conveyed the property more particularly described below to Brad Johnson, as Grantee, by executing and delivering a General Warranty Deed, recorded on August 31, 2012, in Book 3307, Page 799 of the Brunswick County Public Registry, North Carolina (the "Wright Deed"):

> **BEING ALL OF LOTS 13, 15 AND 17, BLOCK 186, SECTION N-6, LONG BEACH (now Oak Island) as per map for National Development Corp. prepared by Howard M. Loughlin, Registered Land Surveyor, recorded in Map Book 11, page 89, office of the Register of Deeds for Brunswick County, North Carolina.**

("Tract II") (together with Tract I, the "Property").

9.     A true and correct copy of the Wright Deed is attached hereto and incorporated herein by reference as **Exhibit B.**

-2-

10. On June 9, 2013, Brad Johnson submitted a Uniform Residential Loan Application (together with any and all subsequent applications, the "Application") to Weststar Mortgage, Inc. ("Lender").

11. In the course of processing the Application, Lender ordered an appraisal of all property to be pledged as collateral for the requested loan.

12. The appraisal culminated in a written appraisal report (the "Report"), which identifies the property that was appraised as the entire Property, *i.e.*, both Tracts I and II.

13. The Report is dated June 12, 2013.

14. On June 12, 2013, Brad Johnson executed an Instrument of Combination recorded on June 13, 2013, in Book 3418, Page 1210 of the Brunswick County Public Registry, North Carolina (the "Instrument of Combination"), whereby the lots comprising Tracts I and II were combined into a single parcel for all taxation and assessment purposes.

15. A true and correct copy of the Instrument of Combination is attached hereto and incorporated herein by reference as **Exhibit C**.

16. Lender ultimately approved Defendant's Application and extended a loan to Defendants.

17. On July 19, 2013, Brad Johnson and wife, Elci Wijayaningsih, as Grantors, executed and delivered to Linear Title, as Trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for the benefit of Lender, as Grantee, a Deed of Trust recorded on July 24, 2013, in Book 3434, Page 37, of the Brunswick County Public Registry, North Carolina (the "Deed of Trust").

18. A true and correct copy of the Deed of Trust is attached hereto and incorporated herein by reference as **Exhibit D**.

19. The Property is described in the Deed of Trust as follows:

BTM:756587v1

The land referred to herein below is situated in the County of Brunswick State of North Carolina described as follows:

Being all of Lots 13, 15 and 17, Block 186, Section N-6, Long Beach (now Oak Island) as per map for National Development Corp prepared by Howard M. Loughlin Registered Land Surveyor, recorded in Map Book 11, Page 89, office of the Register of Deeds for Brunswick County, North Carolina.

Parcel ID: 235-IM-036, 235IM037

This being the same property conveyed to Brad Johnson from Homer E. Wright, Jr., unmarried in a Deed dated August 2, 2012, recorded August 31, 2012, in Book 3329 Page 0354.

Property Commonly Known As: 111 SouthEast 14th Street Oak Island, NC 28465

20.     Through mutual mistake, inadvertence or mistake of the draftsman, the legal description in the Deed of Trust omitted any reference to "Lots 16 and 18."

21.     As a result of the foregoing mutual mistake, inadvertence or mistake of the draftsman, the legal description attached to the Deed of Trust does not reflect the true intentions of the parties as of the date of execution of the Deed of Trust.

22.     On October 17, 2019, MERS assigned the Deed of Trust to Plaintiff by Assignment of Deed of Trust recorded on November 4, 2019, in Book 4269, Page 1286 of the Brunswick County Public Registry, North Carolina (the "Assignment").

23.     A true and accurate copy of the Assignment is attached hereto as **Exhibit E** and incorporated herein by reference.

24.     Plaintiff is the present holder of the Deed of Trust and the obligations secured thereby.

25.     There are no liens on the Property, except for any lien for *ad valorem* taxes, which lien is superior to the Deed of Trust.

- 4 -

## FIRST CLAIM FOR RELIEF
### (Reformation of the Deed of Trust)

26. The allegations set forth in the preceding paragraphs are hereby repeated and realleged as if fully set forth herein.

27. Through mutual mistake, inadvertence or mistake of the draftsman, the legal description in the Deed of Trust omitted a reference to "Lots 16 and 18."

28. As a result of the mutual mistake, inadvertence or mistake of the draftsman, the legal description attached to Deed of Trust does not reflect the true intentions of the parties as of the date of execution of the Deed of Trust.

29. Plaintiff has no adequate remedy at law, and is entitled to a judgment reforming the legal description attached to the Deed of Trust to include the correct description of the Property as follows:

> **The land referred to herein below is situated in the County of Brunswick State of North Carolina described as follows:**
>
> **Being all of Lots 13, 15, 16, 17 and 18, Block 186, Section N-6, Long Beach (now Oak Island) as per map for National Development Corp prepared by Howard M. Loughlin Registered Land Surveyor, recorded in Map Book 11, Page 89, office of the Register of Deeds for Brunswick County, North Carolina.**

30. Equity dictates that the legal description attached to the Deed of Trust be reformed to reflect the true intentions of the parties.

31. Reformation of the Deed of Trust should relate back to the original date and time of recording of the Deed of Trust.

WHEREFORE, Plaintiff prays the Court as follows:

1. Enter judgment reforming the legal description of the Property attached to the Deed of Trust to include the correct description of the Property as follows:

BTM:756587v1

**The land referred to herein below is situated in the County of Brunswick State of North Carolina described as follows:**

**Being all of Lots 13, 15, 16, 17 and 18, Block 186, Section N-6, Long Beach (now Oak Island) as per map for National Development Corp prepared by Howard M. Loughlin Registered Land Surveyor, recorded in Map Book 11, Page 89, office of the Register of Deeds for Brunswick County, North Carolina.**

2.    Order that the reformation of the Deed of Trust shall relate back to July 24, 2013, the date of recording of the Deed of Trust;

3.    Order that Plaintiff has a valid first priority lien against the Property superior to all other liens except for any lien for *ad valorem* taxes;

4.    Order that the judgment be recorded in the Brunswick County Public Registry indexed under the names of all parties to this action and cross-referenced with the Deed of Trust; and

5.    Grant such other and further relief as the Court deems just and proper.

This the ___23ʳᵈ___ day of ___January___, 20_20_.

Chad A. Archer, North Carolina Bar No. 49051
*Attorney for Plaintiff*

OF COUNSEL:

BLANCO TACKABERY
  & MATAMOROS, P.A.
P. O. Drawer 25008
Winston-Salem, NC 27114-5008
Telephone: 336-293-9000
Facsimile: 336-293-9030
E-mail: caa@blancolaw.com

BTM:756587v1

Case 1:20-cv-00175-WO-JLW   Document 4   Filed 02/21/20   Page 6 of 32

# EXHIBIT A

BTM:756587v1



B2856 P0708 11-10-2008
16:36:12.002
Brunswick County, NC Register of Deeds page 1 of 1
Robert J. Robinson        Register of Deeds
11-10-2008 16:36:12.002    Brunswick County, NC
NC REVENUE STAMP: $800.00     (#148639)

Presenter Kipke & Rose Ret: Box
Total 14      Fee: 800    no.
Ck$ 314     C : 2556
Refund

LIMITED WARRANTY DEED

**KNOW ALL PERSONS BY THESE PRESENTS,** that AMTRUST BANK fka OHIO SAVINGS BANK, a federal savings bank (the "Grantor"), 200 Ohio Savings Plaza, 1801 East Ninth Street, Cleveland OH 44114, claims title by or through of the records of Brunswick County, AL for and in consideration of Ten Dollars (10.00) and other good and valuable consideration received from Brad Johnson, it's successors and/or assigns as their respective interests may appear (the "Grantee"), whose tax mailing address will be 111 SE 14th Street Oak Island, NC 28465, GIVE, GRANT, BARGAIN, SELL and CONVEY unto said Grantee, the Grantee's heirs, legal representatives, successors and assigns the real property located in Brunswick County, NC particularly described as follows:

Commonly known as: 111 SE 14th Street Oak Island, NC 28465

Situated in the State of North Carolina County of Brunswick and in the City of Oak Island

EXHIBIT "A"
BEING ALL OF LOTS 16 AND 18, BLOCK 186, SECTION N-6, LONG BEACH (NOW OAK ISLAND), NC AS SHOWN ON MAP RECORDED IN MAP BOOK 11, PAGE 89, BRUNSWICK COUNTY REGISTRY.

To have and to hold the above granted and bargained premises, with the appurtenances thereof, unto the said Grantee, the Grantee's heirs, legal representatives, successors and assigns forever. And the Grantor covenants with the Grantee that Grantor is well seized of the above described premises, as a good and indefeasible estate in FEE SIMPLE, and has good right to bargain and sell the same in manner and form as above written, and represents and warrants that the same are free from all liens, claims and encumbrances created by or through Grantor, except for real estate taxes and assessments, general and special, which are a lien but not yet due and payable, and any and all other liens, claims and encumbrances created by or through Grantee, and that Grantor will warrant and defend said premises, with the appurtenances thereunto belonging, to the said Grantee, their heirs, legal representatives, successors and assigns, against all lawful claims and demands made by any person claiming by or through Grantor, except as aforesaid.

**IN WITNESS WHEREOF,** Grantor has signed and acknowledged this Limited Warranty Deed as of 11/07/08

Signed and Acknowledged
in the Presence of:

Tera King

Michael S. Erb

AmTrust Bank, a federal savings bank

Paula Lechlitner
Vice President

State of Ohio        )
                     ) SS:
County of Cuyahoga   )

Before me, a Notary Public in and for County and State, on this 7th day of November 2008, personally appeared the above named Paula Lechlitner, Vice President of AmTrust Bank, a federal savings bank, who acknowledged to me that, with due authorization and as such officer, he did sign the foregoing instrument of said federal savings bank, and that the same was his free act and deed, individually and as such officer, and the free act and deed of said federal savings bank.
(SEAL)

This instrument Prepared By:
AmTrust Bank
200 Ohio Savings Plaza
1801 East Ninth Street
Cleveland OH 44114

Notary Public
My Commission expires on _____

MICHAEL S. ERB
Notary Public, State of Ohio
My Commission Expires Sept. 14, 2011
Recorded in Cuyahoga County

# EXHIBIT B

BTM:756587v1

Presenen _____ fmt _____
Total _____
Ck$ _____ 343 _____
Refund _____ _____ _____
☐ Parties inprovement in trade is a Junction
   olongaei
☐ Doc , wrongmen con . we on ropes
   tax. .hutou germr4 br deaenh u' w,

Brenda M. Clemmons        Register of Deeds
08-31-2012 13:57:27.004   Brunswick County, NC
NC REVENUE STAMP: $ 80.00      (N314889)

# NORTH CAROLINA GENERAL WARRANTY DEED

Excise Tax:  $ 80.00

Parcel Identifier No. 235IM036,235IM037 & Verified by _____ County on the _____ day of _____, 20___
By: _____ 235IM038

Mail/Box to: PREVATTE & PREVATTE, PLLC, P.O. BOX 10969 , SOUTHPORT, NC 28461

This instrument was prepared by: JAMES R. PREVATTE, JR. (we)

Brief description for the Index: LOT 13, 15 & 17, BLK 186, OAK ISLAND

THIS DEED made this _____ day of _____, 20___ by and between

| GRANTOR | GRANTEE |
|---|---|
| HOMER E. WRIGHT, JR., unmarried<br>P.O. Box 661<br>Eden, NC 27289 | BRAD JOHNSON<br>111 SE 14th Street<br>Oak Island, NC 28465 |

Enter in appropriate block for each Grantor and Grantee: name, mailing address, and, if appropriate, character of entity, e.g. corporation or partnership.

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, that the Grantor, for a valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the Grantee in fee simple, all that certain lot or parcel of land situated in the City of Oak Island, Smithville Township, Brunswick County, North Carolina and more particularly described as follows:

BEING ALL OF LOTS 13, 15 and 17, BLOCK 186, SECTION N-6, LONG BEACH (now Oak Island) as per map for National Development Corp. prepared by Howard M. Loughlin, Registered Land Surveyor, recorded in Map Book 11, page 89, office of the Register of Deeds for Brunswick County, North Carolina.

THIS INSTRUMENT PREPARED BY: JAMES R. PREVATTE, JR, a licensed North Carolina attorney. Delinquent taxes, if any, to be paid by the closing attorney to the Brunswick County Tax Collector upon disbursement of closing proceeds.

The property hereinabove described was acquired by Grantor by instrument recorded in Book 3076 page 0097 .

All or a portion of the property herein conveyed ___ includes or X does not include the primary residence of a Grantor.

A map showing the above described property is recorded in Plat Book 11 page 89 .

NC Bar Association Form No. 3 © 1976, Revised © 1/1/2010
Printed by Agreement with the NC Bar Association


TO HAVE AND TO HOLD the aforesaid lot or parcel of land and all privileges and appurtenances thereto belonging to the Grantee in fee simple.

And the Grantor covenants with the Grantee, that Grantor is seized of the premises in fee simple, has the right to convey the same in fee simple, that title is marketable and free and clear of all encumbrances, and that Grantor will warrant and defend the title against the lawful claims of all persons whomsoever, other than the following exceptions:

IN WITNESS WHEREOF, the Grantor has duly executed the foregoing as of the day and year first above written.

_____   _____ (SEAL)
(Entity Name)                                Print/Type Name: HOMER E. WRIGHT, JR.

By:_____   _____ (SEAL)
Print/Type Name & Title:_____   Print/Type Name:_____

By:_____   _____ (SEAL)
Print/Type Name & Title:_____   Print/Type Name:_____

By:_____   _____ (SEAL)
Print/Type Name & Title:_____   Print/Type Name:_____

State of North Carolina _____ - County or City of Brunswick  Rockingham
I, the undersigned Notary Public of the County or City of Brunswick _____ and State aforesaid, certify that _____
HOMER E. WRIGHT JR. _____  personally appeared before me this day and
acknowledged the due execution of the foregoing instrument for the purposes therein expressed. Witness my hand and Notarial stamp or
seal this 29 day of August , 20 12

My Commission Expires: 9/18. 2013
(Affix Seal)

                                             _____
                                             Brenda W. Hopper
                                             Brenda W. Hopper _____ Notary Public
                                             Notary's Printed or Typed Name

State of _____ - County or City of _____
I, the undersigned Notary Public of the County or City of _____ and State aforesaid, certify that _____
_____  personally came before me this day and acknowledged that _he is the
_____ of _____, a North Carolina  or _____
corporation/limited liability company/general partnership/limited partnership (strike through the inapplicable), and that by authority
duly given and as the act of such entity, _he signed the foregoing instrument in its name on its behalf as its act and deed. Witness
my hand and Notarial stamp or seal, this _____ day of _____, 20___.

My Commission Expires:_____           _____ Notary Public
(Affix Seal)                                    Notary's Printed or Typed Name

State of _____ - County or City of _____
I, the undersigned Notary Public of the County or City of _____ and State aforesaid, certify that _____

Witness my hand and Notarial stamp or seal, this _____ day of _____, 20___.

My Commission Expires:_____           _____ Notary Public
(Affix Seal)                                    Notary's Printed or Typed Name

NC Bar Association Form No. 3 © 1976, Revised © 1/1/2010
Printed by Agreement with the NC Bar Association

# EXHIBIT C

BTM:756587v1

B3418 P1210 06-13-2013 15:20:36.000
Brenda M. Clemmons PROP
Brunswick County, NC Register of Deeds page 1 of 1

**STATE OF NORTH CAROLINA** **INSTRUMENT OF COMBINATION**

**COUNTY OF BRUNSWICK** **Prepared by: Brad Johnson, Ph.D., J.D.**

This Instrument of Combination is made this the 12th day of June, 2013 by the owner, Brad Johnson, whose mailing address is 111 SE 14th Street in Oak Island, North Carolina 28465.

**WITNESSETH:**

_________ WHEREAS, the maker of this Instrument of Combination presently owns tax parcels (1) **Lots 15, 16, 17 & 18, Block 186, Section N6 [Parcel ID: 235IM021]** and (2) **Lot 13, Block 186, Section N6 [Parcel ID: 235IM036]** in the Town of Oak Island, NC (formerly known as Long Beach, NC) by virtue of deed recorded in (1) Map **Book 11 at Page 89** and (2) Map **Book 3307 at Page 0799** in the Brunswick County Registry, respectively; and

_________ WHEREAS, the owner wishes to consolidate (1) **Lots 15, 16, 17 & 18, Block 186, Section N6 [Parcel ID: 235IM021]** and (2) **Lot 13, Block 186, Section N6 [Parcel ID: 235IM036]** into a single tax parcel for all taxation and assessment purposes only; and

_________ WHEREAS, this is a limited special purpose instrument for the purpose specified above and is not a conveyance and not a re-platting of the property and does not change or modify in any manner the ownership interest in the above mentioned properties; and

_________ WHEREAS, upon execution **Lots 13, 15, 16, 17 & 18, Block 186, Section N6** of Oak Island, NC are hereby combined into a single tax parcel **[Parcel ID: 235IM021]** for tax and assessment purposes. Description is as follows:

_________ BEING all of **Lots 13, 15, 16, 17 & 18, Block 186, Section N6** of Oak Island, NC (formerly known as Long Beach, NC) as shown on (1) Map **Book 11 at Page 89 and (2)** Map **Book 3307 at Page 0799** of the Brunswick County Registry, said lots having the metes, bounds and location as shown on said map.

_________ IN WITNESS WHEREOF, the maker has hereunto set his hand and seal the day and year first above written.

Brad R. Johnson

STATE OF NORTH CAROLINA **** COUNTY OF BRUNSWICK

I, Crystal N Blake, a Notary Public of said County and State do hereby certify that **Brad Johnson** personally appeared before me this day and acknowledged the execution of the foregoing instrument. Witness my hand and official seal or stamp, this 12th day of June, 2013.

STAMP OR SEAL Notary Public Crystal N Blake

My Commission Expires Aug 14, 2016

CRYSTAL N BLAKE
NOTARY
MY COMMISSION EXPIRES
Aug 14, 2016
PUBLIC
BRUNSWICK COUNTY, NC

Presenter Brad Johnson Ret: IS
Total 26 ___ Int. NLR
Ck $ ______ ______ Cash $ 55
Refund: $64.00 Cash $ 10 Finance ______
☐ Portions of document are illegible due to condition of original.
☐ Document contains seals verified by original document that cannot be reproduced or copied.

$25.00
non-standard fee

# EXHIBIT D

BTM:756587v1


Brunswick County, NC Register of Deeds

B3434 P0037 07-24-2013
13:26:46.000
Brenda M. Clemmons PROP
page 1 of 12

Presented: *Linear Title* Ret *mail/Pro/JS*
Total *56* Rev _____ in _____ *05*
Chk _____ *56* Ck# *6907* Cash $ _____
Refund: _____ Ck#_$ _____ Finance _____
Excess of document are illegible due to condition
of original
: All contents were verified by original
_____ when the same was reproduced or copied.

[Space Above This Line For Recording Data]

# DEED OF TRUST

CASE #: 18-18-6-0989575

After Recording Return To:
WESTSTAR MORTGAGE, INC.
FINAL DOCUMENT DEPARTMENT
3350 COMMISSION COURT
WOODBRIDGE, VA 96192

After Recording Return To:

Linear Title & Closing
127 John Clarke Road
Middletown, RI 02842

This instrument was prepared by:
JANE WALKER
WESTSTAR MORTGAGE, INC.
3350 COMMISSION COURT
WOODBRIDGE, VA 22192

Title Order No.: WST-255105
Escrow No.: WST-255105
LOAN #: 350353

MIN 1001263-0000545011-3

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   JULY 19, 2013,   together with all Riders to this document.

(B) "Borrower" is  BRAD JOHNSON AND ELCI MIJAYAKINGSTH, HUSBAND AND WIFE.

Borrower is the trustor under this Security Instrument.
(C) "Lender" is  WESTSTAR MORTGAGE, INC.

Lender is a CORPORATION,                          organized and existing under the laws of
VIRGINIA,                             Lender's address is  3350 COMMISSION COURT,
WOODBRIDGE, VA 22192.

(D) "Trustee" is  Linear Title.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3034 1/01      Initials: _____
Online Documents, Inc.                          Page  1  of  9                          NCEDEED 1212
EW





B3434 P0036 07-24-2013
Brenda M. Clemmons 13:26:45.000 PROP
Brunswick County, NC Register of Deeds page 2 of 12

LOAN #: 350353

(F) "Note" means the promissory note signed by Borrower and dated JULY 19, 2013. The Note states that Borrower owes Lender *********THREE HUNDRED THIRTY FIVE THOUSAND FIVE HUNDRED FIFTY TWO AND 00/100*********************************** Dollars (U.S. $335,552.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than AUGUST 1, 2043.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ Other(s) [specify]
☐ 1-4 Family Rider ☐ Biweekly Payment Rider
☑ V.A. Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction] of Brunswick
[Name of Recording Jurisdiction]:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

which currently has the address of 111 SouthEast 14th Street, Oak Island,
[Street] [City]

North Carolina 28465 ("Property Address"):
[Zip Code]

TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3034 1/01
Online Documents, Inc. Page 2 of 9 Initials: _____
NCEDEED 1212
EW

Case 1:20-cv-00175-WO-JLW Document 4 Filed 02/21/20 Page 16 of 32



B3434 P0839 07-24-2013
13:26:45.000
Brenda M. Clemmons PROP
Brunswick County, NC Register of Deeds page 3 of 12

LOAN #: 3500153

holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to: exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. If Borrower has breached any covenant or agreement in this Security Instrument and Lender has accelerated the obligations of Borrower hereunder pursuant to Section 22 then Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

NORTH CAROLINA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3034 1/01
Online Documents, Inc.
Page 3 of 9

Initials: _____





B3434 P0040 07-24-2013
13;26;45.000 PROP
Brenda M. Clemmons
Brunswick County, NC Register of Deeds page 4 of 12

LOAN #: 380353

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3034 1/01
Online Documents, Inc.
Page 4 of 9

Initials: 75NK
NCEDEED 1212
EW





B3434 P0041 07-24-2013
13:25:45.000
Brenda N. Clemmons PROB
Brunswick County, NC Register of Deeds page 6 of 12

LOAN #: 350353

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. If permitted under Applicable Law, Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, if permitted under Applicable Law, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

NORTH CAROLINA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3034 1/01
Online Documents, Inc.
Page 5 of 9

Initials: _____





B3434 P0042 07-24-2013
13:26:46.000
Brunswick County, NC Register of Deeds page 6 of 12
Brenda M. Clemmons PROD

LOAN #: 350353

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security

NORTH CAROLINA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3034 1/01
Online Documents, Inc.                          Page 6 of 9

Initials: 



B3434 P0043 07-24-2013
Brenda M. Clemmons 03:26:48.000 PROP
Brunswick County NC Register of Deeds page 7 of 12

LOAN #: 350255

instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured

NORTH CAROLINA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3034 1/01
Online Documents, Inc.                    Page 7 of 9

Initials: _____



http://brunswick-live.inttek.net/pushimage.ntk?s=NOlfDgS@RzFHDvaegZjVOwdJ7pc58d...     9/9/2019

1" />



B3434 P0044 07-24-2013
13:26:45.000
Brunswick County, NC Register of Deeds page 8 of 12
Brenda M. Clemmons    PROP

LOAN #: 390353

hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with Applicable Law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of ____ % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

NORTH CAROLINA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3034 1/01
Online Documents, Inc.                Page 8 of 9                 Initials: _____



http://brunswick-live.inttek.net/pushimage.ntk?s=Q74ui7V5GGckBJS2gZuDIAzZTysYYZ...    9/9/2019

Case 1:20-cv-00175-WO-JLW   Document 4   Filed 02/21/20   Page 22 of 32

B3434-P0845  07-24-2013
19:26:45.000  PROP
Brenda H. Clemmons
Brunswick County, NC Register of Deeds  page 8 of 12

LOAN #: 350353

it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Attorneys' Fees.** Attorneys' fees must be reasonable.

BY SIGNING UNDER SEAL BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.



Brad Johnson _____ (Seal)
Brad Johnson

Republic of Indonesia
Province of East Java
City of Surabaya                    SS:
Consulate General of the
United States of America

_____ (Seal)
Elsi Wijayaningsih

State of NORTH CAROLINA                                    County of

I, R. CHRIS SANTORO, a Notary Public of the County of
CONSUL OF THE U.S.A., State of North Carolina, do hereby certify that
Brad Johnson AND Elsi Wijayaningsih, personally appeared before me this day and
acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this 10TH day of JULY 2013.

My commission expires: Indefinitely

_____
Notary Public

R. Chris Santoro
Consul of the United States of America

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3034 1/01
Online Documents, Inc.                    Page 9 of 9                    NCEDEED 1212



B3434-P0046 07-24-2013
Brenda M. Clemmons 13:25:46.000
Brunswick County, NC Register of Deeds page 10 of 12 PROP

LOAN #: 350353
CASE #: 35-10-6-0989575
MIN: 1001263-0000545011-3

## VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this 19TH day of JULY, 2013, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to WEBSTAR MORTGAGE, INC.

(herein "Lender")
and covering the Property described in the Security Instrument and located at
111 Southeast 14th Street
Oak Island, NC 28465

VA GUARANTEED LOAN COVENANT: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

LATE CHARGE: At Lender's option, and as allowed by applicable state law, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY: This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to one-half of 1 percent (.50%) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an

VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER
Online Documents, Inc.                  Page 1 of 2                    Initials: _BJC_
P8710ASR 1103
BW





83434 P0047 07-26-2013
13:26:46.000
Brenda M. Clemmons    PROP
Brunswick County, NC Register of Deeds· page 11 of 12

LOAN #: 330353

additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

IN WITNESS WHEREOF, Borrower(s) has executed this VA Guaranteed Loan and Assumption Policy Rider.

Brad Johnson    7/19/2013    (Seal)
Brad Johnson

Elci Wijayaningsih    7/19/2013    (Seal)
Elci Wijayaningsih

VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER
Online Documents, Inc.    **Page 2 of 2**    P8751ASR 1103





B3434 P0048 07-24-2013
18:28:45.000
Brunswick County, NC Register of Deeds    Brenda M. Clemmons    PROP
page 12 of 12

## LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF BRUNSWICK STATE OF NORTH CAROLINA DESCRIBED AS FOLLOWS:

BEING ALL OF LOTS 13, 15 AND 17, BLOCK 186, SECTION N-6, LONG BEACH (NOW OAK ISLAND) AS PER MAP FOR NATIONAL DEVELOPMENT CORP PREPARED BY HOWARD M. LOUGHLIN REGISTERED LAND SURVEYOR, RECORDED IN MAP BOOK 11, PAGE 89, OFFICE OF THE REGISTER OF DEEDS FOR BRUNSWICK COUNTY, NORTH CAROLINA.

PARCEL ID: 235-JM-036,235JM037

THIS BEING THE SAME PROPERTY CONVEYED TO BRAD JOHNSON FROM HOMER E. WRIGHT, JR., UNMARRIED IN A DEED DATED AUGUST 2, 2012, RECORDED AUGUST 31, 2012, IN BOOK 3329 PAGE 0354.

Property Commonly Known As: 111 SouthEast 14TH Street Oak Island, NC 28465

WST-252185

# EXHIBIT E

BTM:756587v1

3 Return to Hutchens Type Mail
Total 26 Rev ______ Int. ______
Ck $ 26 Ck # 2138 Cash $ ______
Refund ______ Cash $ ______ Finance ______
☐ Portions of document are illegible due to condition of original.
☐ Document contains seals verified by original instrument that cannot be reproduced or copied.

## Assignment of Deed Of Trust

ORDER #: 02-19095619-01S
MIN #:1001263000005458113 MERS PHONE #: 1-888-679-6377

For value received, Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for WESTSTAR MORTGAGE, INC., its successors and assigns, whose address is P.O. Box 2026, Flint, MI 48501-2026, hereby grants, assigns, and transfers to: PennyMac Loan Services, LLC whose address is 3043 Townsgate Road, Suite 200, Westlake Village, CA 91361 all beneficial interest under that certain Deed of Trust dated July 19, 2013 executed by:

Borrower: BRAD JOHNSON AND ELCI WIJAYANINGSIH, HUSBAND AND WIFE

For Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for WESTSTAR MORTGAGE, INC., its successors and assigns, whose address is P.O. Box 2026, Flint, MI 48501-2026 in the amount of: $335,562.00, recorded 07/24/2013 in Book/ Volume: 3434 Page: 0037 of the Official Records of Brunswick County, North Carolina

Property Address: 111 SOUTHEAST 14TH STREET, OAK ISLAND, NORTH CAROLINA 28465
Legal Description: SEE EXHIBIT A

**Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for WESTSTAR MORTGAGE, INC., its successors and assigns**

By: ______________________
**SIGNER NAME:** Linda Cobb, Assistant Vice President
**SIGNER TITLE:**

Dated: **OCT 1 7 2019**

State of TEXAS
County of TARRANT

Before me, _____ **Andrew Cragg** _____ , the undersigned officer, on this, **OCT 1 7 2019**,

personally appeared **Linda Cobb** , ~~(~~x)known to me or, ~~to through production~~ of _____ as identification, who identified her/himself to be the _____ **Assistant Vice President** _____ of Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for WESTSTAR MORTGAGE, INC., its successors and assigns, the person and officer whose name is subscribed to the foregoing instrument, and being authorized to do so, acknowledged that (s)he had executed the foregoing instrument as the act of such corporation for the purpose and consideration described and in the capacity stated.

(seal)

ANDREW CRAGG
Notary ID #129974508
My Commission Expires
October 13, 2022

Notary Public, State of TEXAS **OCT 1 3 2022**
My Commission Expires: _____

This Instrument Prepared By:
WASHBURN LAW, PLLC
136 PACOLET STREET
TRYON, NC 28782
After Recording Return To:
OLD REPUBLIC SERVICING SOLUTIONS
P.O. BOX 250
ORANGE, CA 92856

02-18083534-01S | Page No: 2



B4269 P1286  11-04-2019
09:14:04.000
Brenda M. Clemmons        PROP
Brunswick County, NC Register of Deeds   page 3 of 3

Service #: 02-19083534-01S

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF BRUNSWICK
STATE OF NORTH CAROLINA DESCRIBED AS FOLLOWS:

BEING ALL OF LOTS 13, 15 AND 17,BLOCK 186, SECTION N-6, LONG BEACH (NOW OAK ISLAND)
AS PER MAP FOR NATIONAL DEVELOPMENT CORP PREPARED BY HOWARD M. LOUGHLIN
REGISTERED LAND SURVEYOR, RECORDED IN MAP BOOK 11, PAGE 89, OFFICE OF THE
REGISTER OF DEEDS FOR BRUNSWICK COUNTY, NORTH CAROLINA.

PARCEL ID: 235-IM-036,235IM037

THIS BEING THE SAME PROPERTY CONVEYED TO BRAD JOHNSON FROM HOMER E. WRIGHT,
JR., UNMARRIED IN A DEED DATED AUGUST 2, 2012, RECORDED AUGUST 31, 2012, IN BOOK
3329 PAGE 0354.

Property Commonly Known As: 111 SouthEast 14TH Street Oak Island, NC 28465

STATE OF NORTH CAROLINA )  IN THE GENERAL COURT OF JUSTICE
                                       )  DISTRICT COURT DIVISION
COUNTY OF FORSYTH )  _____ CVD _____

PENNYMAC LOAN SERVICES, LLC, )
                                        )
         Plaintiff, )
                                          )
   vs. )  **VERIFICATION**
                                          )
BRAD JOHNSON and ELCI )
WIJAYANINGSIH, )
                                        )
        Defendants. )

I am _Aishah Sandoval/ Authorized Rep._ of PENNYMAC LOAN SERVICES, LLC, Plaintiff in the foregoing action; I have read the foregoing Complaint and know the contents thereof; and that the same are true of my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

This the _10_ day of _January_, 20 _20_.

_[signature]_

Sworn to and subscribed before me
this _____ day of _____ 20____.

                               See Attached
_____
    Notary Public
My Commission Expires:_____

BTM:756587v1

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ **Ventura**

Subscribed and sworn to (or affirmed) before me on this 10th day of JAN. , 20 20 , by AISHAH SANDOVAL

_____

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

FRANK MICHAEL HOFF
Notary Public - California
Ventura County
Commission # 2274472
My Comm. Expires Jan 21, 2023

(Seal)                    Signature _____