IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PENNYMAC LOAN SERVICES, LLC,      )
                                  )
                Plaintiff/        )
     Counterclaim Defendant,      )
                                  )
     v.                           )      1:20CV175
                                  )
BRAD JOHNSON and ELCI             )
WIJAYANINGSIH,                    )
                                  )
                Defendants/       )
     Counterclaim Plaintiff/      )
      Third-Party Plaintiff,      )
                                  )
     v.                           )
                                  )
STANDARD GUARANTY INSURANCE CO.,  )
ERIKA L. SANCHEZ, EFREN           )
SALDIVAR, and ASSURANT, INC.,     )
                                  )
     Third-Party Defendants.      )

## <u>MEMORANDUM OPINION AND ORDER</u>

**OSTEEN, JR., District Judge**

Presently before this court is a Motion to Remand, (Doc. 10), filed by Plaintiff Pennymac Loan Services, LLC ("Pennymac" or "Plaintiff"). Plaintiff seeks to remand this case, including both Pennymac's original claim and Defendants' counterclaim, to the Forsyth County General Court of Justice, District Court Division. Pro se Defendants Brad Johnson ("Johnson") and Elci Wijayaningsih ("Wijayaningsih") (together "Defendants") oppose Plaintiff's motion. This court will grant Plaintiff's Motion to

Remand. Other motions remain pending and will be dismissed as moot upon remand. (Docs. 26, 27, 29, 48, 49, 51, 52, 61, 63, 66.)

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

    A.    **Factual Background**

Pennymac is a Delaware company that conducts business in North Carolina. (Complaint ("Compl.") (Doc. 4) ¶ 1.) Defendant Brad Johnson is an individual who lives in Oak Island, Brunswick County, North Carolina. (Id. ¶ 2.) Johnson's domicile is in South Carolina. (Doc. 16 ¶ 3.) Defendant Elci Wijayaningsih is married to Johnson and lives in Oak Island. (Compl. (Doc. 4) ¶ 3; Doc. 16 ¶ 3.)

In 2008, Johnson received a Limited Warranty Deed, (Ex. A (Doc. 4) at 8)[1], for property from AmTrust Bank. (Compl. (Doc. 4) ¶ 6.) In the public registry, that land was recorded as "all of Lots 16 and 18, Block 186, Section N-6, Long Beach (now Oak Island), NC as shown on map recorded in Map Book 11, Page 89, Brunswick County Registry." (Id.) Several years later, in 2012, Johnson received a General Warranty Deed from Homer E. Wright, Jr. (Id. ¶ 8; Ex. B at 10-11.) That deed was recorded as

_____

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

covering "ALL OF LOTS 13, 15 AND 17, BLOCK 186, SECTION N-6, LONG BEACH (now Oak Island) as per map for National Development Corp." (Id.)

In 2013, Johnson applied for a loan via Weststar Mortgage ("Weststar"). (Id. ¶ 10.) Weststar ordered an appraisal of Johnson's property in order to settle what tract of land would be collateral for the loan. (Id. ¶ 11.) This appraisal covered the entire property, including the property conveyed to Johnson in both 2008 and 2012. (Id. ¶ 12.) Johnson executed an Instrument of Combination on June 12, 2013, in order to combine the two separately-conveyed lots into one parcel. (Id., Ex. C at 13.) Weststar extended Defendants a loan of $335,562.00. (Doc. 11 at 4.) As security, "Defendants, as Grantors, executed and delivered to Linear Title, as Trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for the benefit of Lender, as Grantee, a Deed of Trust" for the land. (Id.; Compl. (Doc. 4) ¶ 17.) This Deed of Trust ("the Deed"), however, describes only the second tract conveyed in 2012. (Compl. (Doc. 4), Ex. D at 15.) Pennymac now alleges this description was a result of "mutual mistake, inadvertence or mistake of the draftsman." (Compl. (Doc. 4) ¶ 28; Doc. 11 at 4.) In 2019, MERS subsequently assigned this Deed of Trust to Pennymac, the present holder of the Deed of Trust. (Compl. (Doc. 4) ¶ 22.)

-3-

Pennymac brought the original complaint in this action against Defendants seeking amendment of the Deed of Trust for the property on 14th Street in Oak Island. Pennymac alleges that a "mutual mistake, inadvertence or mistake of the draftsman" resulted in an incomplete and inaccurate legal description on the Deed of Trust conveyed to Pennymac. (Id. ¶ 28.) Pennymac requests that "the legal description attached to the Deed of Trust be reformed to reflect the true intentions of the parties." (Id. ¶ 30.)

Defendants Johnson and Wijayaningsih filed an Answer, (Docs. 1-2, 6), and Defendant Johnson[2] brought a counterclaim against Pennymac and joined additional third-party defendants Standard Guaranty Insurance Company, Assurant Inc., Erika L. Sanchez, and Efren Saldivar. (Doc. 16.) Defendants' counterclaim brings counts under RICO, the Fair Debt Collection Practices Act of 1970, and common law breach of contract and fraud. (Id.)

B.    **Procedural History**

Pennymac brought its claim in Forsyth County District Court on January 23, 2020. (Doc. 4.) Defendants Johnson and Wijayaningsih filed an answer and original counterclaim on

---

[2] As will be further explained, although the counterclaim states it is brought by Johnson, Wijayaningsih is named as a party and is at least a putative beneficiary of the counterclaim as a "similarly situated" individual.

February 21, 2020, (Docs. 6, 16), then filed for removal to federal court in the Middle District of North Carolina on the same day, (Doc. 1). Pennymac filed its Motion to Remand, (Doc. 10), on March 19, 2020. On April 6, 2020, Johnson amended the counterclaim against Pennymac. (Doc. 16.) Defendants also filed motions for leave to file a Surreply. (Doc. 26.) Pennymac filed a Motion to Dismiss the First Amended Counterclaim on May 27, 2020. (Doc. 29.) Defendant Johnson filed a motion to amend the counterclaim again on September 21, 2020. (Doc. 51.)

Meanwhile, third-party Defendants Standard Guaranty Insurance Company and Assurant, Inc., filed a Motion to Dismiss Count I of the Counterclaim. (Doc. 27.)

## II.  STANDARD OF REVIEW

Courts "should dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) if the complaint fails to allege facts upon which subject matter jurisdiction can be based or if jurisdictional allegations in the complaint are not true." McLaughlin v. Safway Servs., LLC, 429 F. App'x 347, 348 (4th Cir. 2011) (per curiam) (citation omitted); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982) (outlining two ways lack of subject matter jurisdiction arises: failure "to allege facts upon which subject matter jurisdiction can be based" and when "the jurisdictional allegations of the complaint were not

-5-

true"). A challenged plaintiff "bears the burden of persuasion" in defending subject-matter jurisdiction. <u>Williams v. United States</u>, 50 F.3d 299, 304 (4th Cir. 1995).

"The burden of establishing federal jurisdiction is placed upon the party seeking removal." <u>Mulcahey v. Columbia Organic Chems. Co.</u>, 29 F.3d 148, 151 (4th Cir. 1994). Ultimately, "[a]ny doubts about removal must be resolved in favor of remand." <u>UMLIC Consol., Inc. v. Spectrum Fin. Servs. Corp.</u>, 665 F. Supp. 2d 528, 532 (W.D.N.C. 2009); <u>see also</u> <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 108-09, (1941); <u>Turner v. CTS Con-Way Transp. Services</u>, No. 1:98CV00624, 1999 WL 1939243, at *1 (M.D.N.C. Apr. 28, 1999). Out of "[d]ue regard for the rightful independence of state governments . . . [federal courts must] scrupulously confine their own jurisdiction to the precise limits which the statute has defined." <u>Healy v. Ratta</u>, 292 U.S. 263, 270 (1934). Matters can be removed to federal court only when they could have been brought in federal court in the first instance. <u>See</u> 28 U.S.C. § 1441(a). For example, federal courts have jurisdiction over any case that implicates a question of federal law, and such a case can therefore generally be removed to federal court. <u>See</u> 28 U.S.C. § 1331.

## III. **ANALYSIS**

### A. **Federal Question Jurisdiction**

Johnson and Wijayaningsih first argue that this court has federal question jurisdiction over the claim and counterclaim under 28 U.S.C. § 1331. (Doc. 1 at 2.) Federal-question jurisdiction exists when either (1) the right to relief arises directly under federal law, or (2) "the case's resolution depends on resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C. § 1331." Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 806 (4th Cir. 1996). It must be apparent from the face of the complaint that the plaintiff's claims cannot be resolved without reference to federal law or to the U.S. Constitution. Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for So. Cal., 463 U.S. 1, 8-9 (1983).

However, the original well-pleaded complaint, as filed by Pennymac, does not contain a federal claim or issue. (Compl. (Doc. 4).) The complaint focuses only on a potential mistake in the Deed of Trust, (id. ¶ 30), and requests reformation of the deed of trust, (id. at 5-6). Defendants advocate for federal question jurisdiction on the federal issues raised in the counterclaim. However, the Supreme Court has made clear that a counterclaim may not be considered to establish federal question

-7-

jurisdiction. <u>Vaden v. Discover Bank</u>, 556 U.S. 49, 66 (2009) ("Under the well-pleaded complaint rule, a . . . counterclaim . . . does not provide a key capable of opening a federal court's door."); <u>Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.</u>, 535 U.S. 826, 832 (2002) (declining "to transform the longstanding well-pleaded-complaint rule into the 'well-pleaded-complaint-<u>or-counterclaim</u> rule'"). Thus, this court does not have federal question jurisdiction over this claim or counterclaim.

## B. Diversity Jurisdiction

Defendants' second jurisdictional basis for removal derives from 28 U.S.C. § 1332. In order to establish diversity jurisdiction under that statute, Defendants must show two elements: (1) complete diversity of citizenship between plaintiffs and defendants and (2) an amount in controversy in excess of $75,000. 28 U.S.C. § 1332. Prior to determining whether diversity jurisdiction exists, however, this court will address the dispositive forum-defendant rule. The forum-defendant rule determines whether diversity jurisdiction, even if it exists, could serve as a proper basis for removal to federal court.

The forum-defendant rule, contained in 28 U.S.C. § 1441(b)(2), provides that "[a] civil action otherwise

-8-

removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." This case qualifies as a civil action that is "otherwise removable solely on the basis of" diversity jurisdiction, and in this instance, Defendant Wijayaningsih is undisputedly a resident of North Carolina, the "State in which [the] action is brought." Id. The only remaining question is whether Wijayaningsih was properly joined and served.

### 1. **Proper Joinder and Service**

Both Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) in their Answer. (Doc. 6.) The motion explains that there "was ineffectual service of process upon each of the Defendants, Brad R. Johnson and Elci Wijayaningsih." (Id. at 1.) However, contrary to LR 7.3(a), neither Defendant filed a brief in support of the motion to dismiss. Both Defendants have fully participated in this litigation; this court therefore finds, as explained hereafter, that the motion to dismiss should be denied and both Defendants deemed to have been properly served and joined.

Pleadings filed by pro se litigants are liberally construed. See Hill v. Braxton, 277 F.3d 701, 707 (4th Cir.

2002). However, courts are not bound by the "legal conclusions drawn from the facts" and need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Johnson contends he is the sole counterclaim plaintiff in each of the counterclaims. (See Pl. Johnson's Counterclaims Under the Racketeer Influenced and Corrupt Organizations Act Against Countercl. Defs. ("Original Countercl.") (Doc. 6-1) at 2; Countercl. Pl. Johnson's Verified First Am. Countercl. against Countercl. Defs. ("First Am. Countercl.") (Doc. 16) at 2; Countercl. Pl. Johnson's Verified Second Am. Countercl. against Countercl. Defs. ("Second Am. Countercl.") (Doc. 51-1) at 2.)[3] Yet, Elci Wijayaningsih is listed as a party to the counterclaims nonetheless. (Original Countercl. (Doc. 6-1) at 5; First Am. Countercl. (Doc. 16) at 5; Second Am. Countercl. (Doc. 51-1) at 7.) Moreover, though each counterclaim lists Wijayaningsih as a "Party," none explain her standing with any specificity. (See id.)

---

[3] The operative counterclaim pleading at the time of this court's analysis is the First Amended Counterclaim, (Doc. 16), as the motion to amend has remained pending up until this time, (Doc. 51). However, in order to demonstrate the extent of Wijayaningsih's simultaneous inclusion and silence, this court will look at all three versions of the Defendant's counterclaim in its analysis.

-10-

Each of the counterclaims alleges some collective claim on behalf of similarly situated individuals to Johnson, without identifying anyone other than Wijayaningsih who could potentially be implicated. In the original counterclaim, Johnson alleges Plaintiff's schemes were employed "to deprive other persons similarly situated of money and their beneficial interests in real property." (Original Countercl. (Doc. 6-1) at 26.) Likewise, in subsequent counterclaims, Johnson brings class claims on behalf of "similarly situated" individuals. (See First Am. Countercl. (Doc. 16) at 2-3 ("Dr. Johnson seeks to recover statutory damages for . . . other persons similarly situated[]"); Second Am. Countercl. (Doc. 51-1) at 3 ("Defendant Brad Johnson . . . individually, and as representative of a class of assignee PennyMac debtors . . .").)

Wijayaningsih is a necessary party to the action to reform the deed of trust, see Nat'l Union Fire Ins. Co. of Pittsburgh v. Rite Aid of S.C., Inc., 210 F.3d 246, 250 (4th Cir. 2000), and is named as a party in each of Johnson's counterclaims. She is also the only known "similarly situated" individual as referred to in Johnson's counterclaims. Wijayaningsih has been served with at least one of the counterclaims seeking relief on behalf of Johnson and others, (Original Countercl. (Doc. 6-1) at 39), and has not filed any response or any objection to her

-11-

inclusion as a party. Wijayaningsih's silence suggests that while she may contend that she is not properly served and joined, she is also in an obvious position to recover as a party plaintiff in the event Johnson obtains relief on behalf of himself and others similarly situated.

In this case, Johnson and Wijayaningsih are both fully aware of the requirements as to removal: their own briefing acknowledges that "§ 1446(b)(2)(B) allows each defendant '30 days after receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal,' whereupon 'all defendants who have been properly joined and served must join in or consent to the removal of the action.'" (Defs.' Joint Resp. in Opp'n to Pl.'s Mot. to Remand ("Defs.' Remand Resp.") (Doc. 22) at 5.) Both Johnson and Wijayaningsih joined in the notice of removal. (Doc. 1 at 7.) In light of their argument, they both did so with the understanding that "all defendants properly joined and served" must join in removal. Although both Johnson and Wijayaningsih persist in arguing that Wijayaningsih has not been "properly joined and served," (Defs.' Remand Resp. (Doc. 22) at 7), they offer no explanation as to why she joined in removal as opposed to remaining silent or consenting to removal. (See generally id.)

Furthermore, while Wijayaningsih did not sign the counterclaims filed by Johnson, she is listed as a party - without objection - and is readily identifiable as a necessary party to actions affecting the deed of trust. Under these circumstances, this court does not disregard warranted inferences or reasonable conclusions. The aforementioned facts lead this court to conclude that Wijayaningsih is an intended beneficiary of the counterclaims ostensibly asserted solely by Johnson: she is the only known beneficiary of any recovery Johnson might receive on behalf of a "similarly situated" individual.

It is therefore not unreasonable for this court to conclude that Johnson and Wijayaningsih's failure to file a brief in support of their motion to dismiss for lack of service of process, (Doc. 6 at 1), as required by LR 7.3,[4] is not simply an oversight on the part of a pro se litigant. Instead, this court concludes that the failure to submit a brief is an effort by Wijayaningsih to indefinitely maintain a posture in this court that she has not been served and joined, while simultaneously

_____

[4] LR 7.3(a) provides that "[a]ll motions, unless made during a hearing or at trial, shall be in writing and shall be accompanied by a brief except as provided in section (j) of this rule." LR 7.3(k) provides that "[a] motion unaccompanied by a required brief may, in the discretion of the Court, be summarily denied."

maintaining a position as to Johnson's counterclaim in order to benefit from affirmative relief. Johnson has specifically sought affirmative relief in this court. This court finds, pursuant to LR 7.3(k), that Johnson and Wijayaningsih's failure to file a brief in support of their motion should result in denial of the motion to dismiss. (Doc. 6.) Objections to service of process may be waived under Fed. R. Civ. P. 12(h)(1). See also Wabash W. Ry. v. Brow, 164 U.S. 271, 276 (1896). This court finds that Johnson and Wijayaningsih waived any defects in service of process when the original counterclaim was filed by Johnson and named Wijayaningsih as a party was filed in state court, all prior to removal to this court. (See Doc. 1-2.) The motion to dismiss, (Doc. 6), will be denied for failing to file a brief in this court as required. This court finds Johnson and Wijayaningsih have been joined and served in this action. As a result, remand is proper under 28 U.S.C. § 1441(b)(2).

### 2. **Absurd Results**

As an alternative basis for remand, this court has also considered the "absurd result" doctrine of the forum-defendant rule. While this court does not find that doctrine compelling except where the outcome would be "so gross as to shock the general moral or common sense," Sigmon Coal Co. v. Apfel, 226 F.3d 291, 304 (4th Cir. 2000), this court finds that Defendants

-14-

should not be afforded more latitude to manipulate removal jurisdiction than any plaintiff would be given. See, e.g., Hughes v. Wells Fargo Bank, N.A., 617 F. App'x 261, 264 (4th Cir. 2015) (dismissing claim against defendant fraudulently joined by plaintiff merely to prevent removal of case). Here, both Johnson and Wijayaningsih are attempting to seek affirmative relief by manipulating the pleadings so that Wijayaningsih can claim improper service while Johnson simultaneously pursues affirmative relief on her behalf.

The absurd results doctrine divides courts over whether the forum-defendant rule should be applied literally. Phillips Constr., LLC v. Daniels Law Firm, PLLC, 93 F. Supp. 3d 544, 550 (S.D. W. Va. 2015) ("There is a broad and growing divide among the district courts as to whether the forum-defendant rule bars pre-service removal based on diversity jurisdiction."). Typically, the Fourth Circuit requires courts to read statutory text plainly and literally. Hillman v. I.R.S., 263 F.3d 338, 342 (4th Cir. 2001). However, there are two stated exceptions to this Plain Meaning Rule:

> The first exception applies when literal application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent to the contrary. Sigmon Coal Co. v. Apfel, 226 F.3d 291, 304 (4th Cir. 2000). The second exception implicated by the Hillmans' argument applies when literal application of the statutory language at issue "results in an outcome that can

-15-

truly be characterized as absurd, i.e., that is so
gross as to shock the general moral or common sense
. . . ." <u>Id.</u> (internal quotation marks omitted).

<u>Id.</u>

Courts have split on whether, and under what circumstances,
a literal application of the forum-defendant rule would create
"absurd" results. Some courts have confined rejection of the
literal reading to instances in which <u>all</u> defendants are forum
defendants. <u>See, e.g.</u>, <u>Phillips Constr.</u>, 93 F. Supp. 3d at 556
("[I]n cases involving only resident defendants, the forum-
defendant rule bars resident defendants from removing an action
pursuant to diversity jurisdiction before effectuation of
service."). In the instant case, Defendant Johnson contends he
is not a citizen of North Carolina. (Original Countercl. (Doc.
6-1) ¶ 3.) However, the forum defendant actively joined in the
removal of this action, which creates a different set of
circumstances.

> [P]ermitting a forum defendant to appear and seek
> federal jurisdiction for an action through removal,
> whilst simultaneously asserting that it cannot be
> barred from removing because it has not been properly
> made party to the action — through delivery of summons
> and a copy of the complaint — is patently absurd.

<u>Campbell v. Hampton Roads Bankshares, Inc.</u>, 925 F. Supp. 2d 800,
809-10 (E.D. Va. 2013). The rule from <u>Campbell</u> is most directly
applicable here: <u>Campbell</u> narrowly and "expressly limited its
analysis to situations in which the removing defendant was also

-16-

the unserved forum defendant." <u>Bloom v. Library Corp.</u>, 112
F. Supp. 3d 498, 505 (N.D. W. Va. 2015). The court in <u>Campbell</u>
read "served" to mean "actual notice and involvement in the
case," since notice is "the effect that service has on a party."
<u>Campbell</u>, 925 F. Supp. 2d at 810. The court held that "[a]
removing defendant has actual notice of the case, and has become
involved by seeking removal." <u>Id.</u> This narrow exception to the
Plain Meaning Rule has been acknowledged elsewhere in this
circuit even where removal was upheld under different
circumstances. <u>Bloom</u>, 112 F. Supp. 3d at 505.

Nor is the purpose of diversity jurisdiction served by
interpreting the forum-defendant rule in the absurd manner
suggested by Defendants. The "protection upon which removal
based upon diversity is premised is not an issue when an out-of-
state plaintiff chooses to bring[] a suit in the state where the
defendant is a citizen." <u>Councell v. Homer Laughlin China Co.</u>,
823 F. Supp. 2d 370, 379 (N.D. W. Va. 2011) (citation omitted).
This is why the forum-defendant rule exists: "federal diversity
jurisdiction is unnecessary because there is less reason to fear
state court prejudice against the defendants if one or more of
them is from the forum state." <u>Ada Liss Grp. v. Sara Lee Branded
Apparel</u>, No. 1:06CV610, 2007 WL 634083, at *2 (M.D.N.C. Feb. 26,
2007).

-17-

Furthermore, there is no evidence that Pennymac added Wijayaningsih purely to block removal. See Teamsters Local 677 Health Servs. & Ins. Plan v. Friedman, Civil Action No. CCB-18-3868, 2019 WL 5423727, at *3 (D. Md. Oct. 23, 2019) (foregoing a literal reading of the forum-defendant rule where "there is no suggestion that [the plaintiffs] added the Maryland defendants to their lawsuit to prevent removal to federal court" and "most of the defendants . . . are Maryland citizens"). Wijayaningsih is a direct signatory on the loan, (Compl. (Doc. 4) ¶ 16; Ex. D at 15), and is a necessary party to the action. See Kemp v. Funderburk, 224 N.C. 353, 355, 30 S.E. 2d 155, 157 (1944) ("[I]n an action to reform a deed, all parties claiming an interest in the land or any part thereof, purported to have been conveyed by the instrument sought to be reformed, and whose interest will be affected by the reformation of the instrument, are necessary parties to the action.").

Ultimately, the dispositive factor is that Defendant Wijayaningsih joined Defendant Johnson in the motion to remove this case to federal court. Even assuming she was not "properly joined and served" in the traditional sense, Wijayaningsih clearly had notice of the action by virtue of actively participating in it. For Wijayaningsih to actively file for removal of the case, then claim her domicile cannot be

-18-

considered for removal purposes due to lack of notice, defies logic and the purpose of the forum-defendant rule. Since the forum defendant herself "actively sought the removal of this action," this court will accept the interpretation of the forum-defendant rule proffered by Campbell, which prevents exploitation of the literal meaning of 28 U.S.C. § 1441(b)(2). Campbell, 925 F. Supp. 2d at 810.

By virtue of filing an answer and for removal, Wijayaningsih clearly had actual notice of the suit: permitting a forum defendant to remove a case in this instance fails to serve the anti-gamesmanship purpose of the forum defendant rule. See Perez v. Forest Lab'ys, Inc., 902 F. Supp. 2d 1238, 1244 (E.D. Mo. 2012) ("The rationale underlying the forum defendant rule is most clearly contravened when a forum defendant itself removes the action before being served.").

This court need not address whether diversity jurisdiction exists. Any diversity jurisdiction would be an improper basis for removal in this instance, due to the application of the forum-defendant rule. Thus, even under this alternative basis, this case will be remanded to Forsyth county.

## C. **Remand**

Defendants contest whether this case is properly before the Forsyth County court. However, a remanded case must return to

-19-

the court it was removed from: the removal statute, 28 U.S.C. § 1447, describes remand as an "order remanding a case to the State court from which it was removed." 28 U.S.C. § 1447(d). <u>See also</u> <u>Fletcher Partners, LLC v. Truist Bank</u>, Civil No. 2:20-cv-00775-JMG, 2020 WL 5407857, at *3 (E.D. Pa. Sept. 9, 2020); <u>Konold v. Superior Int'l Indus. Inc.</u>, 911 F. Supp. 2d 303, 309 (W.D. Pa. 2012). Thus, as this court does not have subject matter jurisdiction over the case and must remand it, the action must return to Forsyth County court.

## IV. **CONCLUSION**

Perhaps future litigation will demonstrate that the deed of trust should be reformed. On the other hand, future litigation may demonstrate the deed of trust should not be reformed and Plaintiff is entitled to some type of damage award. Regardless, Defendants' attempted manipulation of the removal statute by filing federal counterclaims while simultaneously picking and choosing which individuals would challenge service of process has effectively converted a relatively routine state case into an action that does not appear to reflect an effort to secure the just, speedy, and inexpensive determination of the relevant claims. <u>See</u> Fed. R. Civ. P. 1.

For the reasons set forth herein,

**IT IS ORDERED** that Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1), (Doc. 6), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Pennymac's Motion to Remand, (Doc. 10), is **GRANTED** and that this case is hereby **REMANDED** for further proceedings in the District Court of Forsyth County, North Carolina.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to send a certified copy of this Memorandum Opinion and Order to the Clerk of District Court in Forsyth County.

**IT IS FURTHER ORDERED** that the remaining motions, (Docs. 26, 27, 29, 48, 49, 51, 52, 61, 63, 66), are **DENIED AS MOOT**.

This the 8th day of March, 2021.

William L. Osteen, Jr.
_____
United States District Judge

-21-